

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Marvin Hall, Commissioner
Board of Insurance Commissioners
Austin, Texas

Dear Sir:                    Attention: Mr. J. Blake Timmons

Opinion No. O-596
Re: Construction of special rider
# (4) to the appropriation for the
Fire and Casualty Insurance Divi-
sions of the General Departmental
Appropriation Bill, 46th Legislature,
as related to the "Limitation of
Payments" general rider to such Bill
and to expenses allowable under such
special rider.

By your letter of August 30, 1939, you submit for the
opinion of this Department the following three questions, which we
quote from your letter:

"1. Is the rider to the General Appropriation Act,
Senate Bill 427, as finally passed by the Regular Session
of the 46th Legislature, which provides for the reprinting
of the general basis schedules of fire and windstorm in-
surance rates, and other matters incident thereto, self-
enacting without the approval of the so-called Limitation
of Payments Board as set out in the General rider at the
end of the Appropriation Act?

"2. Within the meaning of the phrase "and other
matter incident thereto," may sufficient personnel be em-
ployed under this rider to prepare the information which
goes into these schedules and read proof on the reprinted
schedules after they are returned from the printer?

"3. Does the word "reprinting" as it refers in this
rider to these rate schedules limit this Department to



republishing existing schedules exactly as they ere now written or does it imply the right of the Department to cause said schedules to be revised when necessary as provided in Article 4882 of the Revised Civil Statutes, which Article is referred to in the rider under consideration."

Article 4902, as amended, Vernon's Annotated Civil Statutes, creates in the State Treasury the Fire Insurance Division Fund, from a tax or assessment of one and one-fourth per cent of the gross insurance premiums collected by all companies doing the business of fire, lightning, tornado, windstorm or hail insurance in this state. This separate Fire Insurance Division Fund is dedicated or set apart for administrative expenses of the Fire Insurance Division in the following words:

". . . and said special Fund or so much thereof as may be necessary shall be held and expended for the purpose of carrying out the provisions of this Chapter; and should there be an unexpended balance at the end of any year, said balance shall remain in said Fund . . ."

Senate Bill 427, Acts, Reg. Ses. 46th Legislature, commonly known as the General Departmental Appropriation Act, after making an appropriation specific as to purpose and amount, out of the above described Fund, for salaries and maintenance expenses, makes the following appropriation by the last paragraph in special rider #(4):

"For the purpose of reprinting the Texas General Basis Schedules of fire and windstorm insurance rates as provided in Article 4882 of the Revised Civil Statutes, and other matters incident thereto, there is hereby appropriated for the fiscal years ending August 31, 1940 and August 31, 1941, so much of the assessments collected under Article 4902, and any balances remaining in the Fire Insurance Division Fund at the end of any fiscal year, or so much thereof as may be necessary, for carrying out the laws of this State with regard to these schedules."

By Departmental Opinion #3082, directed to Governor W. Lee O'Daniel, this Department construed the "Limitation of Payments" general rider to the Departmental Appropriation Bill for the current biennium, to mean that the authority of the Board constituted thereby, related only to surpluses in funds dedicated or devoted to a department's use and benefit, but not appropriated to that department elsewhere than in the "Limitation of Payments" clause. We think the



special rider next above quoted effects an appropriation from the Fire Insurance Division Fund of an amount sufficient to cover the purposes and expenses designated and hereinafter discussed. Therefore, under the opinion cited, this Board would have no authority whatsoever over this appropriation so as to require application by the Department Head and approval by the Board in the statutory mode and manner, before the funds appropriated might be used for the purposes indicated in the special rider. We answer your first question affirmatively.

Your second and third questions may be logically considered together as they both involve the coverage or limitation of the appropriation under consideration - the second question having specific reference to the personnel which might be employed thereunder, and the third question having specific reference to the material which might be paid for therefrom.

This appropriation is "for the purpose of reprinting the Texas General Basis Schedules of fire and windstorm insurance rates as provided in Article 4682 of the Revised Civil Statutes, and other matters incident thereto," etc. Although this appropriation is not specific as to amount it is as to purpose, and since such specific purpose is tied into Article 4882, Revised Civil Statutes, we deem it not amiss to quote the entire Article in order that the statutory provisions governing the preparation and promulgation of the "Texas General Basis Schedules" referred to in the appropriation, may be fully before us:

"The rates of premium fixed by said Commission in pursuance of the provisions of this law shall be at all times reasonable and the schedules thereof made and promulgated by said Commission shall be in such form as will in the judgment of the Commission, most clearly and in detail disclose the rate so fixed and determined by said Commission to be charged and collected for policies of fire insurance. Said Commission may employ and use any facts obtainable from and concerning fire insurance companies transacting business in this State, showing their expense and charges for fire insurance premiums for any period or periods said Commission may deem advisable, which in their opinion will enable them to devise and fix and determine reasonable rates of premium for fire insurance. The said Commission in making and publishing schedules of the rates fixed and determined by it shall show all charges, credits, terms, privileges and conditions which in any wise affect such rates, and copies of

all such schedules shall be furnished by said Commission
to any and all companies effected by this law applying
therefor, and the same shall be furnished to any citizens
of this State applying therefor, upon the payment of the
actual cost thereof. No rate or rates fixed or determined
by the Commission shall take effect until it shall have
entered an order or orders fixing and determining same,
and shall give notice thereof to all fire insurance com-
panies affected by this law, authorized to transact busi-
ness in the State. The State Insurance Commission, and any
inspector or other agent or employee thereof, who shall
inspect any risk for the purpose of enabling the Commission
to fix and determine the reasonable rate to be charged
thereon, shall furnish to the owner of such risk at the
date of such inspection, a copy of the inspection report,
showing all defects that may operate as charges to increase
the insurance rate."

The duties imposed upon the Commission by the foregoing stat-
ute to fix and promulgate rate schedules are not only detailed but
they are continuing. The statute declares that such schedules "shall
be in such form as will in the judgment of the Commission, most
clearly and in detail disclose the rate so fixed and determined by
said Commission to be charged and collected for policies of fire
insurance." To this end the Commission "may employ and use any fact
obtainable from and concerning fire insurance companies transacting
business in this State," and "shall show all charges, credits, terms,
privileges and conditions which in any wise affect such rates," etc.
This language enjoins upon the Commission a rate-fixing power, based
upon a detailed supporting schedule, and, inferentially if not
directly, contemplates that changes must be made from time to time
in the general basis schedules, as changes occur in the facts which
the Commission is allowed and directed to consider in making such
schedules.

Therefore, we say that when the Legislature, by the special
rider under consideration, made an appropriation from the Fire Insur-
ance Division Fund for the specific purpose of "reprinting the Texas
General Basis Schedules of fire and windstorm insurance rates . . .
and other matters incident thereto," it was the manifest intention
to appropriate so much of such Fund as would be necessary to pay all
expenses and costs of labor and material deemed reasonably necessary,
in the discretion and judgment of the Commission, to do the job
effectively. Any narrow and restricted construction of this appro-
priation rider, limiting same to the charges of the printer for



reprinting only the old existing general basis schedules, in their original form, is not justified or required by either the letter or the spirit of this appropriation, and, in fact, would defeat the very purpose of the appropriation. Surely the employment and payment of sufficient personnel to collate the facts and figures furnished by the inspectors, prepare the form of schedule for the printer, edit same, and read proof on these schedules when they are returned from the printer, is comprehended within the expressed purpose of this appropriation for "reprinting the Texas General Basis Schedules . . . and other matters incident thereto."

Under the same construction, we say that this appropriation covers not merely the expense of "reprinting," in a literal sense, the Texas General Basis Schedules, in their existing form and content, but covers the reprinting of such Schedules, with all the alterations, changes and supplements thereof and thereto which may from time to time be required by a change in the conditions and facts required to be considered by the Commission under Article 4688, Revised Civil Statutes.

Your second and third questions are accordingly answered in the affirmative.

Trusting the foregoing satisfactorily answers your inquiries, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By    (Signed)
      Pat M. Neff, Jr.
      Assistant

PMN:N

APPROVED SEP 6, 1939

(Signed) Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

Approved
Opinion Committee
By. B.W.B., Chairman